IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **AARON THOMAS, II,** ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **CAROLYN W. COLVIN, Acting** ) <br> **Commissioner of Social Security,** ) <br> ) <br> Defendant. | **Civil Action Number** <br> **2:13-cv-01859-AKK** |

## MEMORANDUM OPINION

Plaintiff Aaron Thomas, II brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the adverse decision of the Administrative Law Judge ("ALJ"), which has become the final decision of the Commissioner of the Social Security Administration ("SSA"). For the reasons stated below, the court finds that the ALJ applied the correct legal standards and that her decision is supported by substantial evidence. Therefore, the court affirms the decision denying benefits.

### I. Procedural History

Thomas applied for Title XVI Supplemental Security Income ("SSI") on

March 18, 2011, (R. 158), alleging a disability onset date of February 25, 2011, *id.*, due to mental illness, (R. 176). After the SSA denied his application on May 26, 2011, (R. 108–13), Thomas requested a hearing, (R. 117–19). At the time of the hearing on August 6, 2012, Thomas was twenty-one-years old,[1] (R.78), had a limited education, (R. 79), and had no past relevant work experience, (R. 103). Thomas has not engaged in substantial gainful activity since the alleged onset date[2]. (R. 72).

The ALJ denied Thomas' claim on August 31, 2012, (R. 67–84), which became the final decision of the Commissioner when the Appeals Council refused to grant review on August 5, 2013, (R. 50–53). Thomas then filed this action pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988);

---

[1] The ALJ's opinion erroneously lists Thomas' age at the time of the hearing as 20.

[2] The ALJ's opinion erroneously lists February 25, 2011 as the application date. *C.f.* (R. 158) (Thomas' SSI application, listing March 18, 2011 as the application date and February 25, 2011 as the alleged onset date).

*Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *Id.* While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1)  whether the claimant is currently unemployed;

(2)  whether the claimant has a severe impairment;

(3)  whether the impairment meets or equals one listed by the Secretary;

(4)  whether the claimant is unable to perform his or her past work; and

(5)  whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other

than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

### IV. The ALJ's Decision

In performing the Five Step sequential analysis, the ALJ initially determined that Thomas had not engaged in substantial gainful activity since the alleged onset of his disability, and therefore met Step One. (R. 72). Next, the ALJ acknowledged that Thomas' severe impairments of paranoid schizophrenia, psychotic disorder, obesity, and cannabis abuse met Step Two. *Id*. The ALJ then proceeded to the next step and found that Thomas did not satisfy Step Three since he "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments . . . ." (R. 74). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four, where she determined that Thomas:

> has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except that he can lift and/or carry 50 pounds occasionally and 25 pounds frequently. He can sit for six hours over the course of an eight-hour workday. He can stand and/or walk for six hours over the course of an eight-hour workday. He can occasionally climb ladders, ropes and scaffolds; frequently climb ramps and stairs; balance, stoop, crouch, kneel and crawl. He can perform simple, routine and

> repetitive tasks; maintain attention/concentration for 2-hour periods at a time. He can perform jobs involving casual and non-confrontation[al] supervision. He can make simple work-related decisions; perform jobs that do not require close cooperation with coworkers; adapt to routine and infrequent workplace changes; and perform jobs that do not require interacting with the general public as a job duty. He will also miss a day of work a month.

(R. 76). Lastly, in Step Five, the ALJ considered Thomas' age, education, work experience, and RFC, and determined, based on the Medical Vocational Guidelines found in 20 C.F.R. Part 404, Subpart P, Appendix 2, section 203.25 and on the testimony of a vocational expert ("VE"), that "there are jobs that exist in significant numbers in the national economy that [Thomas] can perform." (R. 79). Because the ALJ answered Step Five in the negative, he determined that Thomas was not disabled. *Id*.

## V. Analysis

The court now turns to Thomas' contentions that (1) the ALJ erred by failing to properly evaluate the opinion evidence provided by Dr. Rachel Julian, Thomas' treating physician and (2) the ALJ erred by failing to properly consider Thomas' impairments in combination. The court will examine each contention in turn.

### *A. The ALJ properly afforded little weight to Dr. Julian's opinion*

Thomas first contends that the ALJ erred by failing to properly evaluate the

opinion evidence provided by Dr. Julian, Thomas' treating physician. Doc. 11 at 7. "[T]he testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). "'Good cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440). "When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Id.* (citing *Lewis*, 125 F.3d at 1440).

On June 21, 2012, Dr. Julian prepared a supplemental questionnaire intended to "answer certain questions about [Thomas'] residual function capacity." (R. 301). Dr. Julian indicated that Thomas exhibited "marked" "deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner," *id.*, "impairment of ability to respond to customary work pressures," *id.*, and limitations to his ability to "[r]espond appropriately to co-workers" and "[p]erform repetitive tasks in a work setting," (R. 302). She indicated that he exhibited "moderate" "restriction of activities of daily living,"

(R. 301), "difficulty in maintaining social functioning," *id.*, and limitations to his ability to "[u]nderstand, carry out, and remember instructions," "[r]espond appropriately to supervision," *id.*, and "[p]erform simple tasks in a work setting," (R. 302). She also indicated that Thomas' limitations had either lasted or could be expected to last for twelve months or longer, that she did not perform a psychological evaluation of Thomas in conjunction with completing the questionnaire, and that the level of severity described in the questionnaire "appl[ied] without consideration of substance abuse." *Id*.

The ALJ rejected Dr. Julian's opinion regarding Thomas' limitations. In doing so, the ALJ noted that Dr. Julian's:

> opinion is inconsistent with her treatment notes as well as the findings and conclusions of other mental health professionals. Moreover, her opinion is inconsistent with the nature and type of treatment the claimant has received. For instances, a treatment note dated January 19, 2012, reflects that Dr. Julian treats the claimant with Amantadine and Risperdal. On the same occasion, the claimant reported only experiencing a few episodes of auditory hallucinations and only while sleeping. The claimant's father also reported that the claimant was doing well. An April 18, 2012[] treatment note reflects that the claimant enjoyed participating in activities such as working out, playing basketball and watching television. He also reported working on a GED. Dr. Julian noted that the claimant seemed fairly stable. The aforementioned observations are more consistent with a GAF of 60 as Dr. Myers opined . . . than they are with a finding of "marked" limitations in various function domains as Dr. Julian concluded.

(R. 78) (citations omitted).

Thomas contends that Dr. Julian's opinion is "fully consistent with her treatment notes" because those "records continue to document increased sleep difficulty, abnormal appetite, and auditory and visual[3] hallucinations despite increased medications.[4]" Doc. 11 at 7 (citing (R. 289–300)). This is a misleadingly limited account of Dr. Julian's treatment notes.

The record contains Thomas' medical records generated in connection to four office visits with Dr. Julian. At his initial appointment, Dr. Julian conducted a mental status exam, which yielded largely normal results[5], (R. 295), and performed a more specific Folstein mini-mental status exam, on which Thomas scored twenty-nine out of a possible total of thirty points, (R. 296). During this and subsequent visits, Thomas described a variety of daily activities, including attending church, playing basketball, spending time with friends, going to dance clubs, watching television, and using the Internet. (R. 289, 294). Critically,

---

[3] While Dr. Julian's notes contain multiple notations that Thomas reported auditory hallucinations, generally while he slept, *see* (R. 289, 292, 293, and 300), the court can find no indication that Thomas ever reported experiencing visual hallucinations.

[4] During Thomas' first appointment with Dr. Julian, on July 11, 2011, she increased his dosage of Risperdal from two milligrams to four milligrams. (R. 298). The record does not indicate the reason for this increase and, consequently, it is not evidence supporting the degree of impairment opined by Dr. Julian.

[5] The exam noted Thomas' clean appearance, cooperative demeanor, normal speech and motor skills, slightly impaired but congruent to content affect, normal cognitive functioning, and reports of auditory hallucinations. (R. 295).

Thomas repeatedly told Dr. Julian that he was working on obtaining a G.E.D. and that his long-term goals included attending college and finding a job. (R. 289, 291, and 299). During the second office visit, Dr. Julian noted that Thomas was "improving," (R. 291), during the third she noted that Thomas' father reported that Thomas was "doing well," (R. 289), and during the fourth she noted that Thomas was "fairly stable," (R. 299). This is not to say the record indicates that Thomas suffered no adverse effects caused by his mental illness. To the contrary, he repeatedly reported that he experienced trouble sleeping, (R. 289, 292, 295, and 299), and also reported experiencing auditory hallucinations while sleeping or trying to sleep, (R. 289, 292, and 295), although he denied experiencing auditory hallucinations at his most recent appointment, (R. 299). However, these adverse effects, while significant, do not account for the severe degree of limitations opined by Dr. Julian, and certainly do not support those limitations when placed in context alongside the degree of cognitive function and account of Thomas' day-to-day activities described in Dr. Julian's treatment notes. In sum, the ALJ did not err in affording little weight to Dr. Julian's opinion because it is inconsistent with Dr. Julian's own medical records.[6] *See Phillips*, 357 F.3d at 1241.

---

[6] Thomas also contends that the ALJ erred by declining to afford Dr. Julian's opinion substantial weight because "Dr. Julian opined that her opinion was given without a psychological evaluation," doc. 11 at 7 (citing (R. 78)), and that "Dr. Julian would not be required to get a

Thomas argues that Dr. Julian's opinion is "supported" by medical records from the Taylor Hardin Secure Medical Facility, doc. 11 at 7–8, where Thomas underwent inpatient treatment for approximately a month in late 2010 and early 2011, (R. 255–263), and where healthcare providers assigned him a Global Assessment of Functioning (GAF) score of 50, (R. 255), indicating serious symptoms or serious impairments in social, occupational, or school functioning, doc. 11 at 8 (citing *Diagnostic and Statistical Manual of Mental Disorders*, 4th ed.). This argument falls short for several reasons. First, as explained above, the ALJ properly afforded Dr. Julian's opinion little weight because it was inconsistent with Dr. Julian's own medical records, which is an independent and sufficient basis for disregarding Dr. Julian's opinion regardless of whether there is evidence in the record that might support it. *See Martin*, 894 F.2d at 1529 ("Even if the evidence preponderates against the Secretary's factual findings, [a court] must affirm if the decision reached is supported by substantial evidence."). Second, as discussed above, Dr. Julian's medical records, which reference a

---

psychological evaluation because she is [Thomas'] treating psychiatrist [and not] a onetime evaluat[or], *id*. However, in her opinion, the ALJ noted that "[t]he fact that Dr. Julian rendered her opinion without having first obtained a psychological evaluation of the claimant does not alone warrant affording her findings little weight." (R. 78). To the extent that the lack of a psychological evaluation influenced the ALJ's findings, and, assuming without deciding that such an influence amounted to error, it is harmless error because, as explained above and as the ALJ herself noted, Dr. Julian's "opinion is inconsistent with her treatment notes as well as the findings and conclusions of other mental health professionals." *Id*.

treatment period subsequent to Thomas' stay at Taylor Hardin, do not reflect the degree of functional limitations indicated by the Taylor Hardin records. Third, on May 6, 2011, five months after his release from Taylor Hardin, Thomas underwent a psychological evaluation by Renee Myers, Ph. D., a consulting examiner, who assigned him a GAF of 60, (R. 266), indicating that she believed he was subject to, at most, moderate limitations,[7] doc. 12 at 8 (citing *Diagnostic and Statistical Manual of Mental Disorders*, 4th ed.). In sum, the Taylor Hardin records do not provide support for affording Dr. Julian's opinion greater weight because they are inconsistent with the rest of the medical record, including Dr. Julian's medical records.

Finally, Thomas argues that even in light of the inconsistencies described above, the ALJ was not "free to dismiss Dr. Julian's opinion out of hand" in light of Social Security Ruling 96-5p, which states "[f]or treating sources, the rules require that we make every reasonable effort to recontact such sources for clarification when the provide opinions on issues reserved to the Commissioner and the basis for such opinions are not clear to us." Doc. 11 at 8 (citing SSR 96-

---

[7] Dr. Myers' opinion provides additional support for the ALJ's decision to afford Dr. Julian's opinion little weight. *See Phillips*, 357 F.3d at 1241(citing *Lewis*, 125 F.3d at 1440) (good cause for rejecting a treating physician's opinion exists when the opinion "was not bolstered by the evidence").

5p). This argument is a nonstarter because Dr. Julian did not "provide opinions on issues reserved to the commissioner." *See* 20 C.F.R. § 416.920(d) (identifying issues reserved to the Commissioner, such as opinions as to whether a plaintiff is disabled, meets a Listing, or has a certain residual functional capacity, i.e. "administrative function that are dispositive of a case"); *c.f.* (R. 301–02) (Dr. Julian's supplemental questionnaire, described pp. 7–8, *supra*). Moreover, pursuant to new regulations, which were in effect at the time of Thomas' hearing and the ALJ's decision[8], the decision whether to recontact a treating source is now entirely within the discretion of the ALJ. 20 C.F.R. § 416.920b(c)(1). Simply put, the ALJ was under no obligation to recontact Dr. Julian.

In the final analysis, substantial evidence supported the ALJ's decision to afford little weight to Dr. Julian's opinion, and, pursuant to the applicable law, the ALJ did not err by failing to recontact Dr. Julian.

*B. The ALJ properly considered Thomas' impairments in combination*

Thomas argues that the ALJ failed to consider his impairments in combination with each other because "the ALJ's analysis stops at whether

---

[8] The regulations in question took effect on March 26, 2012. *See* How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10,651, 10,651 (Feb. 23, 2012). Thomas' hearing before the ALJ took place on August 6, 2012, (R. 85), and she issued her opinion on August 31, 2012, (R. 67).

[Thomas'] conditions meet a medical listing, fail[ed] to consider [Thomas'] impairments beyond this step of the sequential evaluation process, and fail[ed] to properly consider [Thomas'] hallucinations and obesity[] at all." Doc. 11 at 9. As a preliminary matter, Thomas' contention that "the ALJ's analysis stops at whether [Thomas'] conditions meet a medical listing" is unfounded. *See* (R. 76–80) (the ALJ's analysis pursuant to Steps Four and Five of the Five Step sequential analysis). As to the rest of Thomas' argument, aside from his conclusory contention that the ALJ "fail[ed] to properly consider [Thomas'] hallucinations and obesity[] at all," Thomas engages in no discussion or analysis of the ALJ's decision. Instead, he cites to a string of cases in support of his general contention, along with some general tenets of Social Security law, doc. 11 at 9–11, and concludes that "the ALJ's decision is not based upon substantial evidence" because "[b]ased on the medical evidence of record and the opinion from treating psychiatrist, Dr. Julian, [Thomas] should have been found 'disabled' by the ALJ," *id.* at 11. Unfortunately, this is essentially the exact argument the court rejected in Part V.A. For this reason alone, Thomas' argument the ALJ failed to consider his impairments in combination is due to be rejected. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *N.L.R.B. v. McClain*

*of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) (citing *Cont'l Tech Serv., Inc. v. Rockwell Int'l Corp*, 927 F.2d 1198, 1199 (11th Cir. 1991)) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.").

That said, turning to the merits of Thomas' contention, the court notes that in this circuit, an ALJ's statement that she has considered the combined effect of a claimant's impairments at step three is sufficient to establish that she has considered the combined effect of a claimant's impairments throughout the Five Step sequential analysis. *See Hutchinson v. Astrue*, 408 F. App'x 324, 327 (11th Cir. 2011) (citing *Jones v. Dep't of Health and Human Servs*, 941 F.2d 1529, 1533 (11th Cir. 1991)). Here, the ALJ stated that Thomas "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments . . . ." (R. 74). Consequently, pursuant to the law of this circuit, she adequately considered Thomas' impairments in combination.

To the extent that Thomas' argument that the ALJ completely failed to consider his obesity and hallucinations is a separate argument from his contention that she failed to consider his impairments in combination, it also falls short. The ALJ discussed Thomas' reports of hallucinations throughout her opinion. *See* (R. 72) (noting that upon admission at Taylor Hardin, Thomas "reported a history of

auditory and visual hallucinations"); (R. 74) (noting that Dr. Julian's treatment records indication Thomas "had a few episodes of audio hallucinations, only when sleeping"). She also noted that Thomas' obesity[9] was a severe impairment. (R. 72). For these reasons, Thomas' argument that the ALJ completely failed to consider his obesity and hallucinations lacks merit.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Thomas is not disabled is not supported by substantial evidence and applied incorrect legal standards. Therefore, the Commissioner's final decision is remanded for further proceedings consistent with this opinion. The court will enter a separate order in accordance with this memorandum of decision.

**DONE** this 16th day of October, 2014.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

[9] Although Thomas (erroneously) contends that the ALJ failed to consider his obesity, the court notes that absolutely nowhere in the record does he claim that his obesity, either alone or in combination with his other impairments, impedes his ability to work. *See* (R. 155–66) (Thomas' application for benefits); (R. 195–202) (Thomas' self-prepared function report); (R. 85–107) (transcript of Thomas' hearing before the ALJ).